STATE of Missouri at the relation of Charles T. SHEPHERD, II, a minor, by Charles M. M. Shepherd, next friend, Petitioner-Relator-Appellant,

v.

The ST. LOUIS COUNTY BOARD OF EDUCATION, and the members thereof, Respondents-Appellees,

and

School District of the City of Ladue and Kirkwood School District R-7, Respondents-Intervenors.

No. 37469.

Missouri Court of Appeals, St. Louis District, Division Four.

Aug. 11, 1976.

Motion for Rehearing and for Transfer to Supreme Court Denied Sept. 30, 1976.

Application to Transfer Denied Nov. 8, 1976.

Shepherd & Weenick, Charles M. M. Shepherd, Clayton, for appellant.

Bertram W. Tremayne, Jr., Clayton, for Kirkwood R–7 School Dist.

Robert Grant, Assoc. County Counselor, Clayton, for Board of Education.

Robert McClintock, St. Louis, for Ladue School Dist.

NORWIN D. HOUSER, Special Judge.

Action in mandamus filed by Charles T. Shepherd, II, by his father and next friend, Charles M. M. Shepherd, against St. Louis County Board of Education and its members, for a judicial finding that Wright School in Ladue School District is more accessible to petitioner's location than any school in the Kirkwood School District R–7, within the meaning of § 167.121, RSMo 1969,[1] and that respondents be commanded to assign petitioner to Wright School and continue that assignment until he completes

---

1. "If any pupil is so located that a school in another district is more accessible, the county board of education shall assign the pupil to the other district. * * *"

the educational program there offered. Both school districts were allowed to intervene. The court issued an alternative writ of mandamus. On full hearing a motion to dismiss the petition for writ of mandamus was sustained, the petition was dismissed, and petitioner appealed.

This litigation arises out of the refusal of the county board of education to assign petitioner, a resident of Kirkwood School District R–7, to Wright School in Ladue School District for the school year 1975–76, on written request of his father, whose three previous annual requests for assignment had been granted. This proceeding is authorized by Rule 100.08 [2] and § 536.150, RSMo 1969. Both in the trial court and on appeal the parties have joined issue on the question whether the action of the board of education was arbitrary, capricious, unreasonable or an abuse of discretion.

Preliminarily, petitioner makes the point that the board of education had no discretion to determine the question of accessibility but was bound to grant the request for assignment to Wright School for a fourth year because the determination that Wright School is more accessible to petitioner had been previously decided in his favor from then-existing facts which had not changed. Appellant argues that the language of § 167.121 is mandatory and leaves no room for the exercise of discretion; that once the facts of location of pupil and schools are shown the board must grant the assignment. We disagree. The determination whether a school in another district is more accessible to a pupil in a given district is not solely a matter of geography, *Haymart v. Freiberger,* 498 S.W.2d 590 (Mo. App.1973); it depends upon the existence or nonexistence of various pertinent facts other than relative distances, and the application of the statutory "more accessible" test to those facts. Such a determination necessarily involves the exercise of discretion. It is not a mere ministerial act but calls for a quasi-judicial determination. Ordinarily the courts cannot compel the exercise of discretion in a particular manner, by the coercion of a judicial decree, see *State ex rel. Rock Road Frontage, Inc. v. Davis,* 444 S.W.2d 43, 46[1] (Mo.App.1969), but Rule 100.08 and § 536.150 provide an exception where the administrative decision is unreasonable, arbitrary or capricious or involves an abuse of discretion.

On this point petitioner takes the further position, without citation of authority, that the question whether Wright School was more accessible was settled, determined and the matter closed when the county superintendent of schools made a

**2.** *"Review by Injunction or Original Writ, When—Scope*

"(a) Review by Injunction—Original Writ or Other Action—Uncontested Cases. When any administrative officer or body existing under the constitution or by statute or by municipal charter or ordinance shall have rendered a decision which is not subject to administrative review, determining the legal rights, duties or privileges of any person, including the denial or revocation of a license, and there is no other provision for judicial inquiry into or review of such decision, such decision may be reviewed by suit for injunction, *certiorari,* mandamus, prohibition or other appropriate action, and in any such review proceeding the court may determine the facts relevant to the question whether such person at the time of such decision was subject to such legal duty, or had such right, or was entitled to such privilege, and may hear such evidence on such question as may be properly adduced, and the court may determine whether such decision, in view of the facts as they appear to the court, is unconstitutional, unlawful, unreasonable, arbitrary or capricious or involves an abuse of discretion; and the court shall render judgment accordingly, and may order the administrative officer or body to take such further action as it may be proper to require; but the court shall not substitute its discretion for discretion legally vested in such administrative officer or body, and in cases where the granting or withholding of a privilege is committed by law to the sole discretion of such administrative officer or body, such discretion lawfully exercised shall not be disturbed.

"(b) Not Applicable to Contested Cases. Nothing in this Rule 100.03 shall apply to contested cases reviewable pursuant to Rules 100.-04 to 100.08.

"(c) Powers Not Impaired. Nothing in this Rule shall be construed to impair any power to take summary action lawfully vested in any such administrative officer or body, or to limit the jurisdiction of any court or the scope of any remedy available in the absence of this section."

factual declaration to that effect in 1972, a factual determination reaffirmed in 1973 and 1974; that "from then on, there was neither discretion nor question that the Wright School was so located to petitioner as to be more accessible." In effect appellant's position is that the matter is res judicata. We find no basis for this contention. The determinations of the county superintendent of schools were made in annual stops. Petitioner's father recognized this by renewing his request annually. While, as petitioner points out, there was no interim change in the location of petitioner's place of residence or in the locations of the schools, these are not the only considerations. Many other factors are to be weighed, and at the time of any annual request the board of education may and should take into consideration any changes in *other* basic factors of which the board has knowledge or which may be brought to its attention.

An allied question is appellant's contention that the court erred in failing to find that the order of the county superintendent of schools was not revocable upon passage of Laws 1973, p. 230, § 1, without a hearing, without established procedures for revocation, and without investigating and taking into consideration the numerous "foundation elements" it should have considered in making a determination; and that the board in so acting violated petitioner's right to due process of law under Art. I, § 10 of the Constitution of Missouri and the Fourteenth Amendment to the Constitution of the United States. Appellant objects that the board acted in a vacuum and in secret, without investigation and without established procedures subject to review and test; that an assignment once made continues for the balance of the educational program offered at the nearest school and therefore petitioner has a constitutional right to a continuation of the educational program at Wright School, where he has developed strong ties to his classmates, teachers and staff; that interruption of the educational course at that school violates petitioner's constitutional right to due process of law.

The action of the county superintendent of schools in annually granting petitioner's annually-made requests for assignment did not give petitioner a vested right to such an assignment in future years. *School Dist. of Mexico, Mo. v. Maple Grove School Dist.,* 359 S.W.2d 743, 747[7] (Mo. 1962), indicates that there are circumstances in which an assignment of a pupil to take effect in the future is within the power of the authority making such an order, as long as the order remains unrevoked, but in the case before us the county superintendent of school did not make an assignment of petitioner in the future, beyond the ensuing year. Petitioner's complaint that the board of education did not investigate and take into consideration twenty-one listed factors pertinent to the inquiry does not necessarily establish that the action of the board was arbitrary, capricious and unreasonable. When petitioner's father requested the board to assign petitioner to Wright School it was not the duty or obligation of the board to conduct an independent investigation, or send out emissaries and investigators to report on all of the many factors involved. Its duty was to consider and act on the basis of all pertinent facts of which it had knowledge or information, but it was not up to the board to make a case for petitioner. The burden of proof was on petitioner to satisfy the board that Wright School was more accessible. While the board did not give petitioner or his father notice of the meeting at which the order of refusal was made, notice is not required under § 167.121, *Red School Dist. No. 1 v. West Alton School Dist. No. 2,* 162 S.W.2d 305, l. c. 306[1] (Mo.App.1942) and further, petitioner's father actually appeared at that meeting and therefore his appearance constituted a waiver of notice. *May Department Stores Co. v. State Tax Commission,* 308 S.W.2d 748, 759[8] (Mo.1958). The board did not act in a vacuum or in secret. It was an open meeting at which petitioner's father appeared in person. He was granted an opportunity to be heard and he presented reasons in support of the assignment of petitioner to Wright School for the ensuing year. That petitioner has pros-

pered and developed favorably in the educational program at Wright School gives him no right to continuance of that program through the sixth grade, as he contends. Under § 167.121 the question before the board was not whether petitioner was happily adjusted and making progress in the educational program at Wright School. The pertinent question was that of accessibility.

Appellant's second point is that the court erred in ruling that the evidence adduced by respondents in the trial of the mandamus action was sufficient (to justify refusal of petitioner's request for assignment), and erred in its finding that the evidence presented by petitioner was insufficient to show that the action of the board was arbitrary, capricious and unreasonable; that the board was not informed concerning, and did not take into consideration, information of a material nature bearing on the question of accessibility and therefore its refusal of petitioner's application was arbitrary, capricious and unreasonable. The scope of review in this type of proceeding is broad. See *State ex rel. Walmar Investment Co. v. Mueller,* 512 S.W.2d 180, 182–183[1] (Mo.App.1974), and *Milberg v. Sanders,* 524 S.W.2d 441, 442 (Mo.App.1975). Under Rule 73.01, we review this court-tried case, upon both the law and the evidence, giving due regard to the opportunity of the trial court to judge of the credibility of the witnesses. It is our duty to sustain the judgment of the trial court "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). Under the prescribed scope of review we sustain the judgment of the trial court.

Relator's home in Frontenac is located in Kirkwood School District R–7, near the line dividing that district from the School District of Ladue. The elementary school nearest relator's residence is Wright School, in the Ladue district, which is 1.8 miles distant. The nearest elementary school located in the Kirkwood district is Westchester School, which is 2.7 miles distant. For the school years of 1972–73, 1973–74 and 1974–75 relator was assigned to Wright School in the Ladue district. His father made application each year for assignment, directing his application to the county superintendent of schools, in whom the authority to make such assignments was vested until July 1, 1974, the effective date of Laws 1973, p. 230, § 1, from which date the authority has been vested in the county board of education. Again acting for his son, Charles M. M. Shepherd on April 23, 1975 requested the county board of education to make a like assignment for the 1975–1976 school year. Although not notified of or invited to the meeting of the board of education at which action was taken on this and three other like applications, Mr. Shepherd attended a meeting on June 9, 1975 and orally presented reasons for the proposed assignment. The record does not reveal what reasons he presented on that occasion. In addition to what Mr. Shepherd had to say the board, in reaching its decision, took into consideration petitioner's prior history; Mr. Shepherd's letter requesting assignment; a letter from the Kirkwood School Board indicating that during the ensuing year Kirkwood district would supply bus transportation to students living more than one mile from schools in that district, and various other factors testified to by Wilbert Diehm, Vice-President of the St. Louis County Board of Education at the mandamus hearing. He said the board had a map showing the routes to the two schools; that the board was acquainted with the distances by automobile and by bus from petitioner's home to the two schools on the most-traveled roads; that the difference was .9 of a mile; that in addition to relative distances the board discussed many things relating to "what is best for the child," including conditions presenting hazards to the child—safety—, the time factor, convenience of the child "and all the many things that might enter into it."

The arrival time at the pickup point .3 of a mile from petitioner's house is 8:14 and

arrival time at Westchester School is 8:27 a.m. It leaves the school at 3:30 and arrives at the pickup point at 3:40 to 3:45 p.m. The distance from the pickup point to Wright School is 1.4 miles and the distance from the pickup point to Westchester School over the bus route is 3.9 miles. The board unanimously voted to deny the application for assignment. Both in its minutes and in a letter sent Mr. Shepherd the reason given for its action was that " * * * the Board has been reliably informed that the Kirkwood District will provide pupil transportation for their schools. Therefore, the Board feels that assignment is no longer necessary."

On the whole case, considering not only the admitted evidence but also that contained in the offers of proof refused by the trial court, we hold that the board of education did not act arbitrarily, capriciously or unreasonably and was not guilty of an abuse of discretion, in denying petitioner's request to be assigned out of his home district of Kirkwood to Wright School in the Ladue district. The new factor not present when the three previous requests for assignment were granted, i.e., that bus transportation to Westchester School was to be provided during the coming year, afforded a reasonable basis for the board to dispose of the request as it did in this particular case, where the difference in the distance between petitioner's home and each of the two schools is minimal; where the two schools are located in a metropolitan area serviced by modern, paved streets; where the travel time on the bus each way does not exceed 15 minutes; where there is no demonstrated material difference in the factor of child safety in going to or returning from either school, and no showing that petitioner's ability to utilize the services available to him at Wright School would be impaired by requiring him to attend Westchester School. The latter was a factor for consideration in *Haymart v. Freiberger, supra,* 498 S.W.2d l. c. 593.

█ As indicated above, we have taken into consideration the evidence petitioner claims was erroneously excluded by the trial court on various offers of proof, viz., that there was no bus company or bus service in existence on June 9, 1975, and the consequent lack of ability of Kirkwood District to provide bus service at that time (it is not contended that bus service was not actually provided during the 1975–76 school term); records bearing on the contention that the sole criteria in determining pupil transfer was whether busing was available; hardships on petitioner and family in participating in extracurricular school activities in the Kirkwood district; places of employment, trade area and general activities of petitioner's parents in relation to Wright School, and their participation in Wright School activities; location of Wright School as a convenience for petitioner's sisters, who attend private schools in the vicinity; physical and medical problems and handicaps of petitioner's mother as affecting her ability to provide transportation and participate in petitioner's educational process, and "the subject of the general convenience and accessibility of the school to petitioner and to his parents * * *." There having been substantial evidence to support the action of the board in determining in effect that Westchester School was more accessible than Wright School, the existence of other facts which would (or might) support a contrary conclusion does not render the board's decision arbitrary, capricious, unreasonable, or an abuse of discretion. *Ott v. United States Board of Parole,* 324 F.Supp. 1034, 1037[4] (W.D.Mo.1971).

█ Petitioner's complaint that the board was not informed concerning and did not consider the twenty-one factors explored by petitioner at the mandamus hearing and listed seriatim in petitioner's brief does not compel a finding of arbitrariness. If presented they would have been considered by the board, according to its vice-president, and the responsibility for presenting them was that of petitioner and his representatives. Furthermore, whether or not the board was apprised of these factors, they were fully aired at the manda-

mus hearing in circuit court, were considered by the circuit court, and have been considered in determining this appeal.

 Nor did the court err in failing to find that respondents are barred by laches in failing to take action at their first opportunity on July 1, 1974, when the law first gave them the authority to rule on such matters. Petitioner claims he was thereby subjected to the injustice of allowing him to continue his schooling at Wright School for a third year, thereby strengthening his ties to the school, teachers, staff and classmates. Laches is an affirmative defense which must be set forth affirmatively in the pleadings. Rule 55.08. Petitioner did not raise the issue of laches in his petition or reply and made no mention of the subject in his motion for new trial. The point is raised for the first time on appeal. "It is elementary that we will not consider matters raised for the first time on appeal and will not convict the trial court of error on something on which it was not accorded an opportunity to rule." *Bennett v. Kitchin,* 400 S.W.2d 97, 103 (Mo.1966).

Treating the motion to dismiss the petition for the writ of mandamus as a motion to quash the alternative writ of mandamus, and the order of dismissal as an order quashing the alternative writ, the order is affirmed.

SMITH, C. J., and ALDEN A. STOCKARD, Special Judge, concur.