Walter R. WILLIAMS, Appellant,

v.

BOARD OF EDUCATION, CASS R–VIII
SCHOOL DISTRICT, Respondent.

No. KCD 29389.

Missouri Court of Appeals,
Kansas City District.

Oct. 30, 1978.

George E. Kapke, Piedimonte & Cochran, Independence, for appellant.

Elvin S. Douglas, Jr., Crouch, Crouch, Spangler & Douglas, Harrisonville, for respondent.

Before SWOFFORD, C. J., and SHANGLER, DIXON, PRITCHARD, WASSERSTROM, SOMERVILLE and TURNAGE, JJ.

SHANGLER, Judge.

This appeal comes from the judgment of the Circuit Court which affirmed the decision of Board of Education of the Cass R–VIII School District to terminate Walter R. Williams as principal of the high school and to demote him to the status of classroom teacher.

The appellant Williams was principal of the high school of the School District since the 1972 academic year. In March of 1976, he was informed by letter from the superintendent of schools that the Board of Education had voted that his contract as principal would not be renewed for the coming school year, and offered instead the position of tenured teacher. The appellant requested a written statement of reasons as allowed a certain status of employment by § 168.101.-6, RSMo 1975 Supp. The reason the Board issued for failure to reemploy was: "We strongly feel that you are allegedly incompetent and inefficient in your line of duty as a principal." The appellant Williams thereupon requested, and was granted, a public hearing before the Board. Williams was there represented by counsel, presented evidence, and cross-examined the witnesses against him. At the conclusion, the Board terminated his employment as principal and demoted him to the status of tenured teacher. This decision was accompanied by a statement of findings of fact and conclusions of law.

The appellant makes two essential contentions on this appeal: First, that he was denied due process of law in particular and, second, that the action of the Board was unsupported by substantial and competent evidence.

The first contention of error subsumes three elements, all couched in the due process terms of the Fifth and Fourteenth Amendments and of Article I, § 10 of the Missouri Constitution: 1. that the Board did not give Williams *specific* written reasons for nonreemployment as principal and demotion to teacher; 2. that the Board was not a fair and impartial tribunal; and 3. that the evidence against him was by witnesses who merely narrated accounts received from other persons whose identities were refused him, thus he was effectively denied cross-examination.

The procedural safeguards of the Fourteenth Amendment follow to protect a substantive right—within constitutional terms—to property or liberty. The claim of

a public school teacher or administrator to the protection of due process in continued employment, therefore, depends upon whether that interest amounts to a right of liberty or property within the compass of the Fourteenth Amendment. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569[1], 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

*Roth* and *Sindermann*, argued and decided concurrently, were suits by teachers at public universities whose expired contracts were not renewed. The cases both raised the question: whether the claim of each to reemployment was an interest protected by Fourteenth Amendment procedural due process and so entitled them to a statement of the reasons for nonrenewal and opportunity to be heard.

*Roth* was a teacher without tenure who was hired by a Wisconsin university for one academic year. That state provided procedural protection against nonrenewal for cause only for those under tenure. Roth was notified, without explanation or opportunity to be heard, that he would not be rehired for the following year. Roth contended that he was thereby denied right to procedural due process.

*Sindermann* was a member of a Texas college faculty. He also was notified, without explanation or prior hearing, that his one-year contract would not be renewed. He also contended he was denied thereby procedural due process.

The United States Supreme Court held that the protections of procedural due process apply "only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property—[then]—the right to some kind of prior hearing is paramount." *Roth, supra,* 408 U.S. l. c. 569, 92 S.Ct. 2705, *Sindermann, supra,* l. c. 597, 92 S.Ct. 2694 et seq. As applied to property interests

[t]he Fourteenth Amendment's procedural protection . . . is a safeguard of the security of interests that a person has already acquired in specific benefits.

[*Roth, supra,* 408 U.S., l. c. 576, 92 S.Ct. 2708]

\* \* \* \* \* \*

To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. [*Roth, supra,* l. c. 577, 92 S.Ct. 2709]

A contract for employment as a public teacher without provision for tenure creates no property interest in reemployment protected by procedural due process. *Roth, supra,* 408 U.S., l. c. 578, 92 S.Ct. 2701. Nor is a teacher who is not rehired but remains free to seek other employment—without more—deprived of his liberty either within the meaning of the Fourteenth Amendment. *Sindermann, supra,* 408 U.S., l. c. 599, 92 S.Ct. 2694. It is clear, however, that even absent a legitimate claim of property right—as in the case of a nontenured teacher or principal—where the nonrenewal of employment, whether tenured or nontenured, involves an interest in liberty due process requires opportunity to refute the charges. *Roth, supra,* 408 U.S., l. c. 572, 92 S.Ct. 2701.

The property interest in reemployment which due process will protect takes many forms: dismissal from an office held under tenure; a dismissal during the contract term; dismissal where continued employment is clearly implied even without formal contract or tenure [*Roth, supra,* l. c. 573, 576, 92 S.Ct. 2701] and dismissal from a position of *de facto* tenure [*Sindermann, supra,* 408 U.S., l. c. 602, 92 S.Ct. 2694]. Any such legitimate expectation to renewal of employment establishes a property right which cannot be dismissed without a statement of reasons and opportunity to be heard. See also: Recent Cases, 38 Mo.L. Rev. 279 (1973); Comment: 61 Ky.L.J. 830 (1973); Case Comment: 25 U. of Fla.L.Rev. 624 (1973).

The appellant Williams can make no claim of *de jure* tenure because his employment is denied "permanent status" by ex-

press provision of statute. Section 168.104.-4. He does not claim *de facto* tenure nor an implied promise of continued employment. Nor does the nonrenewal by the Board rest on a stigma of reputation or other obloquy such as to foreclose other employment opportunities. *Roth, supra*, 408 U.S., l. c. 572, 92 S.Ct. 2701. In other words, Williams has no claim to constitutional procedural due process, and the only process he can claim is whatever may be due under the statute.

■ The Missouri Teacher Tenure Act, §§ 168.102 to 168.130, added by the Laws of 1969, defines permanent status and the procedure for termination of a teacher with such tenure. In these express terms it denies tenure to a principal [§ 168.104.4]:

> Any permanent teacher who is promoted with his consent to a position of principal or assistant principal, or is first employed by a district as a *principal* or assistant principal, *shall not have permanent status in such position* but shall retain tenure in the position previously held within the district, or, after serving two years as principal or assistant principal, shall have tenure as a permanent teacher of that system. [Emphasis supplied.]

The provision which excludes a principal from tenurial employment in that position but allows him status as a *teacher*, shows a legislative intention for flexibility and change in key administrative positions while at the same time affords a principal a certain degree of employment security—as a tenured teacher.

■ If, however, appellant Williams means to claim a *de facto* property right to employment [under *Sindermann*] on the *year-to-year* language of § 168.101.2, that contention is immediately dispelled by § 168.101.6 which provides that personnel with an even greater interest than he can show [those who have been reemployed five times or more][1] may be terminated by simple notice. The provisions of § 168.101.2 are by express terms made "subject to the regulations hereinafter set forth"—including the notice method of § 168.101.6 that the school authority shall merely inform the employee "of demotion or lack of reemployment on the same terms and in the same position" in order to effectuate nonrenewal of employment. These statutes are to be read together to find the legislative intent for nonrenewal of nontenured employment. A public employee may not formulate a *de facto* expectancy of property right in the face of a contrary positive enactment.

■ The employment and reemployment of a principal, therefore, are governed not by The Teacher Tenure Act which specifically excludes that position from its terms, but necessarily by § 168.101 which concerns all certificated employees ineligible for permanent status under The Teacher Tenure Act. That statute [§ 168.101.2] specifies that "after the original employment of a certificated employee . . . under this section, his employment shall continue in the same staff position *from year to year* [emphasis added] subject to certain other regulations." The recourse for a nontenured employee who faces demotion or nonrenewal of employment is by § 168.101.6 which requires the Board to give, upon request, a statement of reasons and hearing with access to counsel to present evidence and cross-examine adverse witnesses. The appellant, however, has no status for the procedure of § 168.101.6 which is accorded by its terms only to certificated personnel who have been reemployed five times within the district.

---

1. The claim of appellant Williams to more specific reasons for nonrenewal of employment as principal and for full right of cross-examination of adverse witnesses admixes constitutional arguments of due process with a contention of a protectible property interest in reemployment granted [as he assumes] by § 168.101.6 to certificated personnel reemployed *three* times within the district. That statute, enacted by the Laws of 1973 and as enrolled by the General Assembly and as approved by the Governor, accords the procedure for notice, hearing and statement of reasons to a certificated employee who has been reemployed *five* times within the district. That statute, *as it appears in the 1978 Cumulative Supplement to the Revised Statutes of Missouri*, erroneously publishes the *three* times qualification and appellant Williams, himself *reemployed* three times within the district, has unwittingly adopted the error.

In the course of exchange whereby the Board notified Williams he would not be reemployed as principal, Williams requested the reasons for the nonrenewal, and the Board [apparently under the misconception of the published statute] responded:

> We strongly feel that you are allegedly incompetent and inefficient in the line of your duty as principal.

Williams contends that these reasons are not sufficiently particular under the statute. This contention proceeds on the premise that he was entitled to the statement of *specific reasons* prescribed by The Teacher Tenure Act, but we have already concluded that he was entitled neither to that procedure nor that of § 168.101.6.

In the absence of the protection of statute—or special constitutional consideration—a school authority need not assign cause or state reasons for the nonrenewal of nontenured employment, nor allow a hearing or opportunity to explain. *Shelton v. Tucker*, 364 U.S. 479, 486, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960); Case Comment: 25 U. of Fla.L.Rev. 624, 625 (1973). A statute which requires notice of intention not to renew a temporary public school employment does not create thereby a system of tenure [*Bergmann v. Board of Education of Normandy Consolidated School District*, 360 Mo. 644, 230 S.W.2d 714, 720[2] (1950)] but means only that the reasons given be advanced in good faith. 78 C.J.S. Schools and School Districts § 197. And the hearing under such a statute is the means whereby the Board explains the grounds for the notice of nonrenewal and the nontenured employees test the good faith and sufficiency of those grounds. 78 C.J.S. Schools and School Districts §§ 196, 197. Williams, however, has no cause for complaint concerning noncompliance with statutory procedures for nonrenewal of employment which, in any event, are not accorded his status.

The appellant Williams contends next that he was not accorded a fair hearing before an impartial arbiter as required by due process of law. That complaint rests on the nature of the functions whereby the Board investigates, accuses and adjudicates, all in the role of administrative tribunal. Our courts have heard and dismissed the same complaint before. *Harrisburg R–VIII School District v. O'Brian*, 540 S.W.2d 945, 950[5] (Mo.App.1976); *Moore v. Board of Education*, 547 S.W.2d 188, 191[6] (Mo.App.1977). The adjudication of such an administrative tribunal, as that of any court, rests on the presumption that the adjudicators have decided honestly and with integrity. The contention that the combination of functions conferred on the Board poses a risk of actual bias or prejudgment, therefore, rests on the contestant of the Board decision.[2] *Withrow v. Larkin*, 421 U.S. 35, 47[8], 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975).

At the outset of hearing before the Board, counsel for Williams probed the individual members of the Board for disposition to prejudgment or bias from their prior investigations of the conduct then under examination for their adjudication. No cause for disqualification was disclosed and counsel proceeded to hearing without further objection. That forecloses assertion here of prehearing prejudice on that account. Nor does the record reflect that attitude of preconception by the Board against Williams during the proceedings which the appellant now claims. *Saunders v. Reorganized School District No. 2 of Osage City*, 520 S.W.2d 29, 36[4] (Mo.1975).

Williams contends also that he was denied the due process right to cross-examine adverse witnesses. He means by this, essentially, that witnesses called by the Board were allowed to repeat narrations of his conduct from others whose identities were kept secret. The proof of the incompetency and inefficiency as principal—the reasons

---

2. More recent legislation has undertaken to sever the dual role of prosecutor and judge of a school board in order to remove even the possibility of prejudicial influences on hearings for dismissals of *tenured* public school personnel. Cal.Educ.Code § 13412–13; New Jersey Stat. Ann. § 18A:6–10; Colo.Rev.Stat.Ann. § 123–18–17; Oregon R.S. §§ 342.805 to 342.955.

stated for nonrenewal of employment—was undertaken by evidence as to his conduct with the faculty and his conduct with the students. The members of the faculty appeared in person at the hearing to relate their complaints of his ineptness as administrator. This testimony was for the most part on personal knowledge. The members of the faculty also gave testimony that Williams was held in disrespect by many of the students—that he went among them by the derisive sobriquet *Zombie*—that his ineffective discipline was an object of their ridicule, and other such incidents of both more and less serious import. Much of this testimony was not on personal knowledge but merely repetitions of what was learned from students. Thus, teacher Wilson related how students had told him Williams had changed his decision at least four times on the policy of whether students should be allowed to drive cars—but refused to identify the student sources. Teacher Carolyn Southers also related what she had learned from students about his lack of decision as to the purchase of lunch tickets, but refused to disclose the identity of the student sources. At least ten such narrations were allowed over objection of counsel for Williams. The Board refused to require the disclosure of the names of the students on the premise that identification would injure the teacher-student relationship. The appellant argues due process grants him unqualified right to confront and cross-examine the witnesses against him in order to establish the falseness of that evidence and that the policy of the Board to deny him access to the students denied him that right. He supports that contention by *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

■ *Goldberg* involved the termination of welfare benefits established by statute without prior evidentiary hearing. The court held that the benefits were created by statute as an entitlement for persons qualified to receive them and that their termination involved state action that adjudicated *an important right* and so was protected by the due process requirement of a prior evidentiary hearing. The opinion determined that the loss to the recipient was sufficiently grievous so that such a significant right could be deprived not only by adequate notice with reasons for the proposed termination but also with [l. c. 268, 90 S.Ct. 1020] "an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally." [3]

■ Thus appellant Williams continues to assume that the renewal of his untenured employment as principal was akin to a property right entitled to the protection of due process. We repeat simply that the procedural requirements for nonrenewal of public school employment depend altogether upon the interest at stake. The appellant Williams claims he was deprived of his property interest in continued employment as principal and so is entitled to full procedural due process. A property interest, however, is a creature of state law and any entitlement to the public employment Williams claims must arise from statute. *Sindermann, supra*, 408 U.S., l. c. 599–603, 92 S.Ct. 2694; *Board of Curators of the University of Missouri v. Horowitz*, 435 U.S. 78, 98 S.Ct. 948, 55 L.Ed.2d 124 [1978]. It is clear from § 168.101 and the Teacher Ten-

3. The United States Supreme Court has not yet declared a *per se* rule that the opportunity to cross-examine and confront witnesses in civil proceedings is an element of procedural due process. Aniteau, Modern Constitutional Law, Volume 1 § 5:77. *Goldberg* accords them in administrative and regulatory actions where grievous loss could result and so falls in the line of other decisions: *Greene v. McElroy*, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959) which accords cross-examination and confrontation in a Defense Department proceeding to revoke security clearance, and *Reilly v. Pinkus*, 338 U.S. 269, 70 S.Ct. 110, 94 L.Ed. 63 (1949) where that procedure was accorded as a right against administrative charges of serious fraud. The rights of cross-examination and confrontation are recognized, as of course, in Missouri in formal civil litigation [*Pettus v. Casey*, 358 S.W.2d 41, 44[8, 9] (Mo.1962)] and in special actions where the interest—such as termination of parental rights—is so cogent as to come under the protection of constitutional due process. *In Re S——— M——— W———*, 485 S.W.2d 158, 163[3–5] (Mo.App.1972).

ure Act [§§ 168.102 to 168.130] that a non-metropolitan school district principal has no tenure—nor possibility of tenure—in that position. It is also clear that Williams lacks the reemployment status for the procedures of § 168.101.6 and so, even if that statute can be understood to protect an interest in continued employment—which we do not decide—he cannot claim the efficacy of whatever due process of law that procedure commands.

 We would agree with appellant Williams that were his interest that of a tenured employment—which he erroneously assumes—so that the proceeding was that provided by The Teacher Tenure Act, the harm threatened by the termination of employment would be so grievous that constitutional due process would require the right of full cross-examination of adverse witnesses and confrontation of those whose statements are offered as evidence. *Goldberg v. Kelly, supra*, l. c. 268, 90 S.Ct. 1011; *Greene v. McElroy*, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377; *Roth, supra*, 408 U.S., l. c. 577, 92 S.Ct. 2701; *Sindermann, supra*, 408 U.S., l. c. 597, 92 S.Ct. 2694; *In Re S———— M———— W————, supra*.

 The appellant Williams makes the final contention that the decision of the Board was unsupported by substantial and competent evidence and therefore should be set aside. The decision of the Board is accompanied by thirty-two specific findings of fact which tend to demonstrate that appellant was an inefficient and incompetent high school principal. The decision was merely the culmination of the original misconception that § 168.101.6 compelled the formality accorded nonrenewal of the Williams employment. The ceremony was gratuitous.

The judgment of the Circuit Court to sustain the decision of the Board is affirmed.

All concur.