Robert E. FULLER, Plaintiff-Appellant,

v.

NORTH KANSAS CITY SCHOOL DISTRICT, et al., Defendants-Respondents.

No. WD 30752.

Missouri Court of Appeals, Western District.

Sept. 29, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Nov. 17, 1981.

Application to Transfer Denied Jan. 18, 1982.

H. George Lafferty, Jr., Kansas City, for appellant.

Joseph A. Sherman, Jackson & Sherman, P. C., Kansas City, of counsel, for respondent.

Before KENNEDY, P. J., PRITCHARD, J., and SWOFFORD, Senior Judge.

BEN W. SWOFFORD, Senior Judge.

This case was tried upon the plaintiff's third amended petition. That party is hereinafter referred to as "Fuller". The suit was brought against the North Kansas City School District and its members of the Board of Education named individually and hereinafter referred to collectively as "District". The petition was cast in two counts. Count I in substance alleged that Fuller's contract of employment as an elementary school principal was wrongfully terminated by the District under § 168.102 et seq., RSMo.1969, and Count II in substance alleged that Fuller was thus deprived of his procedural due process constitutional rights in violation of the Fifth and Fourteenth Amendments to the Constitution of the United States, and of his rights under Article I, Chapter 10 of the Constitution of Missouri. The answers filed to this third amended petition were in the nature of certain admissions, general denials and specific allegations that the District's refusal to reemploy Fuller was taken under the provisions of § 168.101 RSMo., was the proper procedure, and that Fuller had failed to avail himself of the exclusive and necessary administrative remedies as provided therein.

At the trial of this case Fuller offered extensive evidence both by witnesses and documentary in nature, and the District during Fuller's evidence offered certain documentary evidence. At the close of the evidence the trial court overruled Fuller's motion for a directed verdict, sustained the District's motion for a directed verdict (without comment or memorandum), discharged the jury and this appeal followed.

The parties to this action entered into a written stipulation as to uncontroverted facts, which is part of the record before this court. The facts covered therein are basic to the determination of this case and are thus summarized:

(1) Plaintiff, Robert E. Fuller, was first employed as a grade school principal by the North Kansas City School District in July of 1959; (2) he was last employed by the School District on the 9th day of June, 1975, and his employment was under written contract; (3) during this period of employment from 1959 through 1975 Fuller did not teach or otherwise instruct pupils but functioned as an elementary school principal; (4) written notice was given to Fuller entitled "Notice of Lack of Re-employment" of the decision of the District not to reemploy him, and was received by him on April 11, 1975, which notice was in conformity with § 168.-101(3) RSMo., and which notice is part of this record; (5) Fuller did not at any time request of the District a statement of the reasons for the lack of reemployment, a procedure available to him under § 168.-101(6), RSMo.; (6) Fuller did not at any time make a written request of the District for a hearing on the question of his lack of reemployment; (7) no such hearing was held by the District; and (8) it did not comply with § 168.116, RSMo., which provides for procedures to be followed by a

school board, including notice in writing of termination, specifically stating the causes which may result in charges, notice of a hearing on any charges, and a written notice of the specific charges to be so heard as grounds alleged to exist for termination.

In addition to these stipulated facts certain undisputed facts appear in the testimony and from the exhibits offered and received in evidence.

Fuller was employed by the District since 1959 upon separate yearly contracts covering each academic year. His contract was a form used by the District designated as "Administrator-Supervisor-Employment Contract"; he was employed throughout the sixteen years as an elementary school principal at a salary level which was different than the schedule covering teachers' salaries; and throughout that period he did only administrative work, did not regularly teach or instruct students, and, so far as the record shows, had taken no additional studies or refresher courses in his specialty of Social Studies. However, the records disclose that on May 6, 1969, Fuller received from the State of Missouri lifetime certification as an elementary school teacher in Social Studies, grades 7 through 12. After he received notice from the District of lack of reemployment in April, 1975 he again applied for certification in July, 1975 and was certified for life as a teacher in Social Studies, grades Kindergarten through 6th Grade.

Conflict is encountered in this record in the area of Fuller's functions as principal and administrator of his school and his health. He offered evidence that he was an excellent, well-qualified elementary school principal, in good physical and mental health and performed his duties well. The District's records, on the contrary, disclosed that during his last two years as principal his performance was subject to much criticism, discussion, conferences (in which he participated) with his superiors, and corrective directions, including close, on the scene overt observations of the school's daily functions by administrative superiors of the District. Further, he had some health prob-

lems during this period, the exact nature of which were not disclosed, but including "pains in the chest" which on at least one occasion required his hospitalization and absence from job for approximately forty school days.

Following Fuller's failure to be reemployed he tried unsuccessfully to obtain employment with other school districts and in August, 1977 he retired and began drawing retirement benefits from the Missouri Public School Retirement System.

Because of this court's view as to the law applicable and controlling in this state of the record, further specific detail as to these areas of conflict need not be here accounted.

Fuller raises two points on this appeal. He asserts as his Point I that the court erred in directing a verdict for the District because he was entitled to a *de jure* tenure *as a teacher* under § 168.102 et seq., RSMo. 1969. His Point II urges that this action of the trial court constituted error because his termination of employment by the District violated his constitutional rights to procedural due process. Both of these points are dependent upon Fuller's position that when he was not reemployed he was at least a permanent tenured teacher under the Teacher Tenure Act, §§ 168.102 to 168.130 (Laws 1969, p. 275, effective July 1, 1970) now § 168.102 et seq., RSMo.1978, and was entitled to the procedural safeguards as therein provided for tenured teachers under § 168.104. On the other hand, the District takes the position that under the undisputed facts in this case Fuller did not enjoy the position of a permanent tenured teacher, either *de facto* or *de jure*, but that his procedural due process rights were governed solely by the provisions of § 168.101, RSMo.1978 (Laws 1973) pertaining to staff administrative positions. The determinative question, therefore, is whether Section 168.101 or Section 168.104 is applicable to Fuller's status when he was not reemployed. Further refined, the issue is whether Fuller, clearly an elementary principal and not an active teacher, meets the definitions of Section 168.104 and was enti-

tled to tenure as a "permanent teacher" upon the District's refusal to reemploy him as principal, and the concomitant procedural due process rights afforded by § 168.116, RSMo., to permanent tenured teachers who are terminated.

These statutory laws are all part of Chapter 168, RSMo.1978, governing "Personnel-Teachers and Others". An examination of these statutes discloses the fact that the "Teacher Tenure Act" was adopted by the General Assembly, Laws 1969, and was effective July 1, 1970, and specifically encompasses Sections 168.102 to 168.130, the sections relied upon by Fuller, whereas Section 168.101 upon which the District places its emphasis is not a statutory part of the "Teacher Tenure Act". However, as will appear, these statutory enactments, in some particulars, overlap and, of course, will be considered together in the resolution of this controversy. The pertinent provisions are:

"Section 168.101. Employment of certified teachers ineligible for permanent status under teacher tenure act . . . .

1. . . . the school board or board of directors of a school district . . . may . . . contract and employ *legally certified teachers*, not employed as superintendent of the district and *not eligible under Section 168.104* R.S.Mo.1969, *to gain permanent status or tenure in the position held within the school system . . .*" (Emphasis supplied.)

Section 168.101 contains seven additional subsections mandating the details, procedures and terms of such permitted employment including detailed rights and procedures available to such employee if not reemployed . which mandate formal complaint, specification of charges, hearing and other procedural due process protections only where the employee requests such "in writing . . . within ten days after receipt of notice . . . of lack of reemployment." [Sec. 168.101(6)]. This statute was adopted Laws 1973, H.B. 151, Sec. 1, which, it is noted was subsequent to the enactment of the Teacher Tenure Act. No dispute exists that while Fuller was a certified teacher he was first employed by the District as a school principal and served in that capacity performing no functions as a teacher for sixteen years when he was not reemployed in any capacity. Fuller argues that, nevertheless, he was entitled to *de jure* tenure as a teacher under Section 168.102, which is, as pointed out, an integral part of the Teacher Tenure Act. Further refined, Fuller's position is based upon the theory that, while he attained no tenure as a principal under Section 168.102, *supra*, he occupied the status, by operation of law, of a "permanent teacher" under Section 168.104(4), and was therefore entitled to the procedural due process as provided under Section 168.116 of the Teacher Tenure Act upon termination, which procedure was wrongfully withheld by the District. Section 168.104(4) provides, in pertinent part, as follows:

"Definitions—

'Permanent teacher', any teacher *who has been employed . . . as a teacher in the same school district* for five successive years and who has continued . . . to be employed as a *full time teacher* by the school district; . . . Any *permanent teacher* who is *promoted* with his consent to a position of principal or assistant principal or is *first employed by a district as principal* or assistant principal, shall not have permanent status *in such position* but shall *retain tenure* in the position previously held *within the district*, or, after serving two years as principal . . . *shall have tenure as a permanent teacher of that system* ; . . ." (Emphasis supplied.)

Appellant contends that the statutory language of this section means that after serving two years as *principal*, Fuller enjoyed automatic permanent *teacher* tenure including the protections of Section 168.116. District, on the other hand, contends that the statutory language means that *teachers* who have attained permanent status in one district do not lose it completely upon becoming a *principal* in another district, but rather acquire permanent teacher status in the second district after serving two years as principal.

■ The basic rule of statutory construction is to seek the intention of the Legislature, which should be ascertained from the words used, if that is possible, and in doing so the words used should be given their plain and ordinary meaning so as to promote the object and manifest purpose of the statute. *State ex rel. State Highway Commission v. Wiggins*, 454 S.W.2d 899, 903[5] (Mo. en banc 1970).

■ This section plainly contemplates only situations involving *permanent teachers* who are employed as principals. If a permanent teacher is promoted to principal within the same school district in which permanent teacher status was attained, no permanent status is enjoyed in the *principal* position, but *permanent status is retained* as a teacher. If a *permanent teacher* is first employed as a principal in another school district, again there is no tenure in the principal position, but "after serving two years as principal or assistant principal, shall have tenure as a permanent teacher *of that system*" (the new district).

It should be again noted here that Fuller was first employed by the District in 1959, not as a teacher but as an elementary school principal. Prior to that time he was employed in the same capacity by another school district in Clay County, Missouri. So far as this record discloses he was first certified as a teacher by the State of Missouri in 1969 but had never been employed as a teacher by either Missouri District.

Whether or not a person employed or promoted to the post of principal enjoys tenure under the Teacher Tenure Act, under either theory of the parties, depends upon a showing that he has been "employed as a teacher" for a definite period of time and is therefore a "permanent teacher". The reason is obvious. The tenure period is a trial period (five years in Missouri) during which the employing authority can gauge the skills and competence of the teacher and during which the teacher can perfect those values before permanent tenurial contracts of employment are made.

Although the language of this portion of § 168.104(4) is less than crystal-clear in this regard, the case of *Williams v. Board of Education, Cass R–VIII School District*, 573 S.W.2d 81, 85 [7, 10] (Mo.App.1978) lends support to this construction, l.c. 85:

"In these express terms it denies tenure to a principal [§ 168.104.4]: ...
The provision which excludes a principal from tenurial employment in that position but allows him status as a teacher, shows a legislative intention for flexibility and change in key administrative positions while at the same time affords a principal a certain degree of employment security—as a tenured teacher."

and later, l.c. 85:

"*The employment* and reemployment *of a principal*, therefore, *are governed not by the Teacher Tenure Act* which specifically excludes that position from its terms, *but necessarily by § 168.101* which concerns all certified employees ineligible for permanent status under the Teacher Tenure Act." (Emphasis supplied.)

The *Williams* case denied application of the termination procedures for tenured teachers to a principal of over two years status when that principal was demoted to a permanent teacher.

In further support of this construction, § 168.104(7), in defining teachers, excludes "superintendents, assistant superintendents, and *any other persons regularly performing supervisory functions as their primary duty*." The termination procedures of § 168.101(1) apply to those "not eligible under § 168.104, RSMo.1969, to gain permanent status or tenure *in the position held within the school system*." Although plaintiff Fuller possesses a teacher's certificate, the facts indicate that as a principal his duties consisted solely of supervisory and administrative functions. His contract was denominated for administrators and supervisors, his salary was not based on a teacher's schedule but was recommended by the central office administration, his duties were to provide administrative and supervisory leadership, and during his sixteen years he did not teach or otherwise instruct pupils in the classroom. Certification does not confer tenure but is only a condition

prerequisite to employment. Service *as a teacher* alone earns tenure.

■ From the stipulation and the evidence it is clear plaintiff was not a teacher under the Teacher Tenure Act, much less a "permanent teacher".

■ Appellant contends that construing § 168.104(4) in this fashion leads to the "absurd and possibly unconstitutional result" that a permanent teacher in one district, upon becoming a principal for two years in a second district and regaining permanent status as a teacher, has more employment security than an individual who has served sixteen years solely as a principal in one district only. Although it is true the former individual would have tenure *as a teacher*, the latter individual is still entitled to the procedures afforded by § 168.101. This appears to be a rational legislative scheme, and to hold otherwise would be to contradict clear authority of the *Williams* case, l.c. 85 supra.

It appears convincingly from this record that Fuller was not denied any of his procedural due process rights under Section 168.101.

Fuller claims *de facto* tenure, by virtue of his series of (16) one-year contracts of employment as principal under the doctrine of *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), giving him an expectancy of employment violated by defendants denying plaintiff procedural due process.

■ As respondents point out, constitutional issues must be raised at the earliest opportunity consonant with good pleading and orderly procedure under the circumstances of the case, or such issues are deemed waived. *Christiansen v. Fulton State Hospital*, 536 S.W.2d 159, 160[2] (Mo. en banc 1976). None of respondents' cases show nor does research disclose a case where such issue first raised in an *amended petition* has been held waived. However, between the filing of the initial petition on August 26, 1975, and the filing of the third amended petition first raising the constitutional question on March 3, 1978, two and one-half years elapsed. No reason appears why this constitutional issue could not have been included in the original petition. The *Sindermann* decision of 1972 is well-known. This court will nevertheless deal with the merits of Fuller's constitutional argument.

■ Under *Perry v. Sindermann*, these arguments must fail. The *Perry* case stands for the proposition that where a teacher's contract is not renewed by an administration with *no tenure system*, the teacher can nevertheless obtain the procedural due process protections of *notice* (statement of reasons of termination) and a *hearing* (opportunity to challenge the reasons) by proof of "rules and understandings, promulgated and fostered by state officials" that constitute a " 'common law' in a particular university that certain employees shall have the equivalent of tenure". l.c. 408 U.S. 602, 603, 92 S.Ct. 2700, 2701, *Perry* stands for the proposition mere subjective expectation of these protections are not protected.

Missouri's system gave Fuller the right, upon written request, of a statement of reasons and a hearing to challenge these reasons, with the rights of counsel, cross-examination, and production of evidence, § 168.101.6. Fuller made no such request and thus refused to pursue the procedural protections he now claims under *Perry v. Sindermann*.

In the *Williams* decision, this court stated, l.c. 85:

"A public employee may not formulate a *de facto* expectancy of property right in the face of a contrary positive enactment."

Further, appellant has not proven any understandings, agreements, rules, or common law elevating his subjective expectation of continued employment to a property or liberty right triggering due process protections under *Sindermann*. Appellant claims the District led him to believe the Teacher Tenure Act was applicable to him, citing Tr. 58 and Plaintiff's Exhibit 3. Examination of these documents in no way indicates a principal is entitled to procedural protections of the Teacher Tenure Act.

Appellant Fuller's Points I and II are ruled against him.

The judgment is affirmed.

All concur.